**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Whaleco, Inc. | ) | |
| | ) | Case No. 1: 23-cv-15424 |
| v. | ) | |
| | ) | Judge:  Hon. |
| temuapp.biz, nocdqqe.info, | ) | |
| temu-app.net, fabioduque.com, | ) | Magistrate: Hon. |
| grabcodesnow.com, couponsky.net, | ) | |
| icycoupons.com, boujeecoupons.com, | ) | |
| darkycoupons.com, hozubea.com, | ) | |
| qosae.com, temudeals.store, | ) | **JURY DEMAND** |
| temucouponcodes.com, rewardspulse.com, | ) | |
| giftcardhero.net, glengog.com, | ) | |
| waferdeal.info, digitalbargainportal.com, | ) | |
| greatparcelsswiss.com, drywink.com | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Whaleco, Inc. (d/b/a "Temu"), hereby files this Complaint for, *inter alia*, violations of the Anti-Cybersquatting Consumer Protection Act, and trademark infringement. On personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

### The Parties

1. Whaleco, Inc. is a Delaware corporation, and a wholly owned subsidiary of PDD Holdings Inc., a publicly traded company (NASDAQ: PDD) with a market capitalization in excess of $100 billion.

2. "temuapp.biz" is an Internet domain name registered on October 3, 2023 through domain name registrar Namecheap, utilizing a privacy service utilizing that shields the identity of the true registrant.

3.      "temu-app.net" is an Internet domain name registered on February 13, 2023 through domain name registrar Namecheap, utilizing a privacy service utilizing that shields the identity of the true registrant.

4.      "temudeals.store" is an Internet domain name registered on July 10, 2023 through domain name registrar Namecheap, utilizing a privacy service utilizing that shields the identity of the true registrant.

5.      "temucouponcodes.com" an Internet domain name registered on May 13, 2023 through domain name registrar Namecheap, utilizing a privacy service utilizing that shields the identity of the true registrant.

6.      "nocdqqe.info" is a site offering an unauthorized Temu "app" which is registered utilizing a privacy service utilizing that shields the identity of the true registrant. The true names and capacities of this defendant is unknown, and so the defendant is identified by the domain name itself.

7.      "fabioduque.com" is a site offering unauthorized Temu "gift boxes" which is registered utilizing a privacy service utilizing that shields the identity of the true registrant. The true names and capacities of this defendant is unknown, and so the defendant is identified by the domain name itself.

8.      "greatparcelswiss.com" is a site offering unauthorized Temu "gift boxes" which is registered utilizing a privacy service utilizing that shields the identity of the true registrant. The true names and capacities of this defendant is unknown, and so the defendant is identified by the domain name itself.

9.      "qosae.com" is a site mimicking Temu's marketplace, and uses the Temu marks to imply that the site is a Temu site.

10. "glengog.com" is a site mimicking Temu's marketplace, and uses the Temu marks to imply that the site is a Temu site.

11. "drywink.com" is a site mimicking Temu's marketplace, and uses the Temu mark in copyright notices and the checkout screen, to imply that the site is a Temu site.

12. "waferdeal.info" and "digitalbargainportal.com" are sites that purport to sell palettes of goods from Temu, but are not authorized Temu sites.

13. "grabcodesnow.com", "couponsky.net", "icycoupons.com", "boujeecoupons.com", "darkycoupons.com", "hozubea.com", "rewardspulse.com", and "giftcardhero.net" are sites offering an unauthorized Temu "coupon codes" and are registered utilizing a privacy service utilizing that shields the identity of the true registrant. The true names and capacities of this defendant is unknown, and so the defendants are identified by the domain names.

### Jurisdiction and Venue

14. This is an action for trademark infringement, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

15. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. § 1125.

16. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

17. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**Background Facts**

18. Whaleco Inc. operates an ecommerce platform called TEMU at temu.com ("TEMU.COM" or the "Platform"). The Platform is also accessible via the Temu app, which can be downloaded on both the Apple App Store and the Google Play Store.

19. The Platform has operated in the United States since September 1, 2022. Consumers in the United States can purchase goods on the Platform from third party sellers in many categories, including clothing, consumer goods, cosmetics, appliances and electronics.

20. TEMU.COM is a closed-loop online marketplace that connects consumers with sellers, manufacturers and brands around the world. The Platform is committed to offering the most affordable quality products to enable consumers and sellers in an inclusive environment. To keep the Platform a safe and secure shopping environment for consumers, Plaintiff and its affiliates also provide trust and safety services to curate sellers, and risk control and data security services to protect consumers' personal and payment information.

21. Plaintiff, through its affiliate, Five Bells Limited, is the exclusive licensee of all rights, title, and interest in and to, *inter alia*, the TEMU word marks and TEMU design marks

(U.S. Reg. Nos. 7157165, 7164306, 7157220, and 7145476) (collectively, the "Mark" or "Marks"). The registrations are valid, subsisting, unrevoked, and uncancelled pursuant to 15 U.S.C. § 1065. The registrations for the Marks constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the Marks pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of the U.S. federal trademark registration certificate for the TEMU Marks is attached as Exhibit 1.

22. The Temu platform has become extremely successful. It has become the number one downloaded shopping app in the U.S.

23. The TEMU Mark has been widely promoted throughout the globe including within the United States. Consumers, potential consumers, and other members of the public not only associate Plaintiff's marketplace with exceptional quality, style, and affordable prices, but also recognize the Plaintiff's marketplace in the United States originates exclusively with Plaintiff.

24. Plaintiff maintains quality control standards for all TEMU sites and apps. The Temu app is available for download through verified app stores, such as the Apple App Store and Google Play. A printout of the Temu site is attached as Exhibit 2.

25. The TEMU Mark has never been assigned or licensed to any of the Defendants in this matter.

26. The TEMU Mark is a symbol of Plaintiff's quality, reputation, and goodwill and has never been abandoned.

27. Further, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the TEMU Mark.

28. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's rights in the TEMU Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

29. In or around October 2023, Plaintiff identified the TEMU Mark in the Domain names specified in Paragraphs 2-5 (collectively the "Infringing Domains") and on the websites specified in Paragraphs 2-13 (collectively the "Infringing Websites") that Defendants had reproduced, displayed, and distributed without authorization or license from Plaintiff in violation of the TEMU Mark.

30. Defendants' use of the Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the counterfeit apps or unauthorized coupons and promotions is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

31. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the TEMU Mark in connection with the advertisement, offer for download, unauthorized apps and products, through, *inter alia*, the Internet. The domains featuring app downloads are not authentic Temu sites. The Plaintiff did not develop, inspect, or publish the sites or their apps, and did not approve them for distribution. Each Infringing Website offers services to the United States, including Illinois, and, on information and belief, each Defendant has completed downloads or offers into the United States, including Illinois.

32. Defendants go to great lengths to conceal their true identities, registering domain names using privacy shields, and failing to publish contact information on their websites.

33. The Defendants owning and operating the Infringing Domains have used the TEMU mark in their domain names without authorization, to create a false association with Temu and deceive consumers. Copies of the Infringing Domains are attached as Exhibit 3.

34. The remaining Defendants utilize the TEMU Marks to create a false association with Temu, to trade on the Goodwill of the TEMU Marks, and to deceive consumers into believing the sites are legitimately associated with, or providing services for Temu. Copies of the Infringing Websites are attached as Exhibit 4.

35. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of creating counterfeit websites that infringe upon the TEMU Mark unless preliminarily and permanently enjoined.

36. Plaintiff has no adequate remedy at law.

**COUNT ONE**
**ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT VIOLATION**
**(15 U.S.C. §1125(d))**

37. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

38. The registrant of the Infringing Domains has registered, trafficked in, and/or used domain names that are identical and confusingly similar to the TEMU Marks, which were distinctive at the time the registrants registered them in violation of the ACPA.

39. The registrant of the Infringing Domains has a bad faith intent to profit from the TEMU Marks because the registrant has no legal right to use the Infringing Domains, which are being used to divert consumers from Plaintiff's legitimate website for the purpose of commercial gain.

40. Under the ACPA, Plaintiff is entitled to an order requiring the domain name registrar to transfer the Infringing Domains to Plaintiff's registrar of choice.

41. As a direct and proximate result of the wrongful conduct described in this Complaint, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

42. Plaintiff has been required to retain the services of an attorney to pursue its claims and is entitled to reasonable attorneys' fees and costs incurred in the prosecution of this action.


**COUNT TWO**
**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. §1114)**

43. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

44. The Plaintiff's Mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. The Mark is highly distinctive and has become universally associated in the public mind with Plaintiff's marketplace and related services. Consumers associate the Plaintiff's Mark with the Plaintiff.

45. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's Mark and the fact that Defendants' websites are marketed and services offered using marks which are identical or confusingly similar to the Plaintiff's Mark. The Defendants have developed, distributed, offered for sale, and/or offered services to the consuming

public in direct competition with Plaintiff's offer of genuine Temu services, in or affecting interstate commerce.

46. Defendants' use of copies or approximations of the Plaintiff's Mark in conjunction with Defendant's unauthorized services or products is likely to cause and is causing confusion, mistake, and deception among the general purchasing public as to the origin of the services and is likely to deceive the public into believing the unauthorized products or services being offered by Defendants originate from, are associated with, or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

47. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.


**COUNT THREE**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. §1125(a))**

48. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

49. The unauthorized services sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's marketplace and services offered for sale by the Plaintiff and, as such, Defendants' use of the TEMU Marks is likely to cause confusion to the general purchasing public.

50. By misappropriating and using the Plaintiff's Marks and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the

services and create a likelihood of confusion by consumers as to the source of such services.

51. Defendants' unlawful, unauthorized, and unlicensed development, distribution, offer for sale, and/or sale of the unauthorized services creates express and implied misrepresentations that the services were created, authorized, or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

52. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

53. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputation.

## Jury Demand

54. Plaintiff demands a jury trial on all claims so triable.

## Prayer for Relief

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

A. A judgment in favor of Plaintiff on all of the claims for relief pleaded herein;

B. An order requiring their Domain Registars to place the Infringing Domains and Infringing Websites on hold and lock them for the pendency of this litigation;

C. An order requiring their Registrar to disable the name server information for the Infringing Domains so that they are no longer accessible to Internet users for the pendency of this litigation;

D. An order requiring any Content Delivery Networks ("CDN"), such as CloudFlare, as well as any Domain Hosting Company for the Infringing Websites to cease providing infringing content and make the Infringing Websites inaccessible to Internet users for the pendency of this litigation;

E. An order requiring, upon a finding on the merits, the current domain name registrar for the Infringing Domains to change the registrar of record for the Infringing Domains from the current domain name registrar to Plaintiff's registrar of choice;

F. An order requiring, upon a finding on the merits, requiring any CDNs, such as CloudFlare, as well as any Domain Hosting Company for the Infringing Websites to cease providing infringing content and make the Infringing Websites inaccessible to Internet users;

G. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    i. operating any website, or using any domain names, that use the TEMU Marks;

    ii. engaging in any act of federal, state, or common law trademark infringement or unfair competition that would damage or injure Plaintiff; and

    iii. encouraging, participating in or assisting in any of the above activities;

H. An order that the Defendants be required to account for and pay to Plaintiff all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein;

I. That judgment be entered against Defendants for Plaintiff's actual damages as a result of Defendants' act of infringement and other unlawful conduct alleged herein;

J. In the alternative, that Plaintiff be awarded statutory damages of One-Hundred Thousand Dollars (U.S.) and No Cents ($100,000.00) for each and every use of the Plaintiff's Mark counterfeited by each Defendant;

K. An order that Plaintiff be awarded maximum statutory damages for violations of the Anti-Cybersquatting provisions of the Lanham Act in an amount not less than $100,000 for each of the Infringing Domains and Infringing Websites;

L. That Plaintiff be awarded reasonable attorneys' fees and costs; and

M. That Plaintiff be granted such other and further relief as the court deems just and proper.

Respectfully submitted,

By:     s/David Gulbransen/
David Gulbransen
Attorney of Record

David Gulbransen (#6296646)
Law Office of David Gulbransen
805 Lake Street, Suite 172
Oak Park, IL 60302
(312) 361-0825 p.
(312) 873-4377 f.
david@gulbransenlaw.com