# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Whaleco, Inc. ) | |
| ) | Case No. 1: 23-cv-15424 |
| v. ) | |
| ) | Judge: Hon. Mary M. Rowland |
| temuapp.biz, nocdqqe.info, ) | |
| temu-app.net, fabioduque.com, ) | Magistrate: Hon. Beth W. Jantz |
| grabcodesnow.com, couponsky.net, ) | |
| icycoupons.com, boujeecoupons.com, ) | |
| darkycoupons.com, hozubea.com, ) | |
| qosae.com, temudeals.store, ) | |
| temucouponcodes.com, rewardspulse.com, ) | |
| giftcardhero.net, glengog.com, ) | |
| waferdeal.info, digitalbargainportal.com ) | |
| greatparcelswiss.com, drywink.com ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Plaintiff Whaleco, Inc. ("Whaleco"), submits the following memorandum in support of their Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendant Does, as identified on Schedule A of the Complaint (collectively, the "Defendants"), who have not been dismissed, in their action for trademark infringement, counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act.

### STATEMENT OF FACTS

Whaleco, Inc. ("Whaleco") operates an ecommerce platform called TEMU at temu.com ("TEMU.COM" or the "Platform"). The Platform is also accessible via the Temu app, which can be downloaded on both the Apple App Store and the Google Play Store. The Platform has operated in the United States since September 1, 2022. Consumers in the United States can

purchase goods on the Platform from third party sellers in many categories, including clothing, consumer goods, cosmetics, appliances and electronics.

Whaleco, through its affiliate, Five Bells Limited, is the exclusive licensee of U.S. Registrations (U.S. Reg. Nos. 7157165, 7164306, 7157220, and 7145476) for the TEMU word mark and TEMU design mark, which have been used exclusively and continuously by Temu (or its predecessors) since at least as early as 2022. *See* Declaration of Kathleen Zhang at ¶3. The Mark is displayed prominently on the TEMU Platform. Temu has expended considerable resources advertising, marketing, and promoting the TEMU Marks, and these efforts have resulted in substantial downloads the Temu app, traffic to the TEMU.COM site, as well as invaluable consumer goodwill. *Id.* at ¶ 6-9.

The primary way in which Defendants advertise infringing goods and services on the Infringing Websites is by displaying the TEMU Trademarks. Kathleen Zhang Decl. at ¶¶ 11-12. Plaintiff has confirmed that the sites are accessible and targeted to residents of the United States and the State of Illinois. *Id*. Plaintiff also concluded that the Infringing Domains and Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the TEMU Mark for any reason. *Id*.

Due to the nature of Defendants' illegal activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill. *Id* at 13. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of infringement. *Id*. Plaintiff's goodwill and reputation are irreparably damaged when the TEMU Trademarks are used on websites for services not authorized, produced or offered by the Plaintiff. *Id* at 14. This

leads to brand confidence being damaged, resulting in loss of future sales and market share. *Id* at 14. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id*. Defendants' illegal use of the TEMU Mark further irreparably harms Plaintiff because imposters like the Defendants take away Plaintiff's ability to control the nature and quality of its services. *Id* at 15. Loss of quality control over services bearing the TEMU Trademarks and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. *Id* at 15.

Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities. Based on previous cases of Infringing Domains and Infringing Websites that unlawfully use a brand owner's trademarks, when any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of an entity involved in counterfeiting, the requested relief is rendered ineffective and meaningless, because counterfeiters operate as a proverbial "moving target," beyond the effective reach of rights owners seeking to enforce their rights.

## ARGUMENT

### I. Jurisdiction and Venue Are Proper in This Court

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the

Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. See Complaint at ¶¶ 8; *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial Internet websites, each of the Defendants has targeted sales from Illinois residents by offering shipping to Illinois and, on information and belief, have sold Counterfeit Whaleco Products to residents of Illinois. As such, personal jurisdiction is proper since each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Whaleco substantial injury in the State of Illinois. See *True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 (N.D. Ill. Feb. 6, 2013) (unpublished) (Docket Nos. 42 and 43); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (unpublished) (Docket Nos. 68 and 69).

## II. Plaintiff Has Met the Requirements for Entry of Default

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On October 30, 2023, Whaleco filed its Complaint for violations of the Anti-Cybersquatting Consumer Protection Act (Count I), Federal trademark counterfeiting and Unfair Competition and False Designation of Origin (Count II). (Docket Entry 1).

The Defendants were properly served on January 30, 2024. (Docket Entry 21). Despite having been served with process, the Defendants have ignored these proceedings and failed to plead or otherwise defend this action. (Gulbransen Declaration at ¶ 2). Upon information and belief, Defendants are not active-duty members of the U.S. armed forces. (Id. at ¶ 3). Accordingly, Whaleco asks for entry of default against Defendants.

### III. Plaintiff Has Met the Requirements for Entry of Default Judgment

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Whaleco served Defendants on January 30, 2024. More than 21 days have passed since Defendants were served, and no answer or other responsive pleading has been filed. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and Plaintiff requests an award of damages as authorized by 15 U.S.C. § 1117(c)(1) for willful trademark counterfeiting against each of the Defendants in the amount of $250,000 per Defendant for use of counterfeit Whaleco trademarks on products sold through each of the Defendant's websites. Whaleco also seeks entry of a permanent injunction prohibiting Defendants from selling Counterfeit Whaleco Products, an Order that the domains used by Defendants to sell Counterfeit Whaleco Products be permanently transferred to Whaleco, and that all assets in Defendants'

Amazon, PayPal, eBay, Wish, Walmart, Payoneer, WorldFirst, Bill.com, Western Union, MoneyGram, etc. accounts, as well as any newly discovered assets, be transferred to Whaleco.

### A. Plaintiff Will Likely Succeed on Its Anti-Cybersquatting and Trademark Infringement and Counterfeiting Claim

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. See *Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001)).

Whaleco alleges in its Complaint that its TEMU Trademark is highly distinctive, that Defendants have knowledge of Plaintiff's rights in the TEMU Trademark, that Defendants are not authorized to use the TEMU Trademark, and that Defendants' use of the TEMU Trademarks causes a likelihood of confusion. Complaint at ¶¶ 29-33. Since the Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in the Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Whaleco requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the TEMU Trademark.

### B. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) defendant used a false designation of origin in connection with products; (2) defendant's use of the products was in interstate commerce; and (3) there is a likelihood that consumers will be confused by defendant's false designation of origin. *Web Printing Controls Co.,*

*Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).

Plaintiff alleges in its Complaint that Defendants' Counterfeit products are of the same nature and type and look identical to genuine Whaleco products, but Defendants' Counterfeit products are not of the same quality as genuine products. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation or sponsorship of Defendants' Counterfeit products with genuine Whaleco products. Complaint at ¶¶ 34-39. Furthermore, by using a counterfeit of the TEMU Trademark on the Counterfeit Whaleco products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Whaleco services. Id. at ¶ 38. As such, Whaleco requests entry of judgment with respect to Count II for willful false designation of origin.

## IV. PLAINTIFF IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. See *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. Defendants' Counterfeiting Was Willful

As indicated in Plaintiff's Complaint, Defendants facilitated sales by using the TEMU mark on their website store listings. Complaint at ¶¶ 29-33, 34-39. Use of the marks make it difficult for consumers to distinguish such counterfeit products from genuine Whaleco products.

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. at 20. In the instant case, Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the TEMU Trademark as demonstrated the Registrations and the fame of the TEMU Marks.

Finally, District Courts have deemed counterfeiting willful when defendants default. *See True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 (N.D. Ill. Feb. 6, 2013) (unpublished) (Docket No. 43); *Oakley, Inc. v. Does 1-100*, No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket No. 32).

### C. A High Statutory Damages Award Is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). See *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. See *Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. See, e.g., *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Oakley, Inc. v. Does 1-100*, No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket No. 32) (awarding $2,000,000 in statutory damages per defendant); *Coach, Inc. v. Does 1-573*, No. 1:12-cv-1514 (N.D. Ill. Oct. 15, 2012) (unpublished) (Docket No. 27) (awarding $2,000,000 in statutory damages per defendant); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. June 29, 2012) (unpublished) (Docket No. 33) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Whalecorespectfully requests the Court's entry of an award $250,000 per Defendant.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor*

9

*& Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

### D. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Whaleco respectfully requests entry of a permanent injunction enjoining Defendants from infringing or otherwise violating Plaintiff's registered trademark rights in the TEMU Trademark, including at least all injunctive relief previously awarded by this Court to Whaleco in the TRO and preliminary injunction. Whaleco is also entitled to injunctive relief so it can quickly take action against any new websites that are identified, found to be linked to Defendants, and selling Counterfeit Whaleco products. See *Oakley, Inc. v. Does 1- 100*, No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket Nos. 31 and 32); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-07970 (N.D. Ill. May 17, 2012) (unpublished) (Docket No. 67).

### CONCLUSION

Whaleco respectfully requests that the Court enter default and default judgment against each Defendant, award statutory damages as authorized by 15 U.S.C. § 1117(c)(1) for willful trademark counterfeiting against each of the Defendants in the amount of $250,000 per Defendant and enter a permanent injunction prohibiting Defendants from using the TEMU Marks, any discovered assets, be transferred to Whaleco, and that the Defendant's Domain

Names be transferred to Whaleco.

Dated this 1st day of March, 2024.

Respectfully submitted,


By:   s/David Gulbransen/
      David Gulbransen
      Attorney of Record

      David Gulbransen (#6296646)
      Law Office of David Gulbransen
      805 Lake Street, Suite 172
      Oak Park, IL 60302
      (312) 361-0825 p.
      (312) 873-4377 f.
      david@gulbransenlaw.com